ELIZABETH COLLINS, *et al.*, plaintiffs in error, *vs.* THOMAS J. BARKSDALE, *et al.*, defendants in error.

[1.] Where the bill charges that the tenant for life in slaves, in concert with others, is selling the same, and applying the money to the payment of her debts, a Court of Equity will take such steps to secure the preservation of the property for the remainder-man, as, in its discretion, under all the circumstances, it may deem best fitted for the end.

Collins et al. vs. Barksdale et al.

[2.] Chancellors in this country have as much if not more power than they have in England, in the means to be used to prevent the removal of property, and thus defeat the ends and object for which it was appropriated.

[3.] When the possession and enjoyment of property is future, less stringency of statement and of verification will be required in a bill of *quia timet*, filed for the purpose of protecting the ultimate right.

[4.] Perhaps, in all cases of *quia timet*, the interlocutory order should be, that the defendant give bond with sufficient security, the amount to be prescribed by the Chancellor, that he will stand to, abide by, and perform the final decree to be rendered in the case.

In Equity, from Wilkes Superior Court. Decision by Judge THOMAS, at chambers, 29th August, 1857.

Motion to revoke orders, and set aside proceedings, &c.

The legatees in remainder of certain slaves, under the will of Gibson Collins, deceased, filed their bill in equity, against Elizabeth Collins, the widow, and tenant for life of said slaves, and Joseph Collins, one of the executors of said will, alleging, that amongst the slaves bequeathed to said Elizabeth for life, remainder to complainants, were two valuable negro men, Richmond and Felix. That said Elizabeth had placed said slaves in the hands of said Joseph, who resided in the county of Columbia, and that by arrangement between them, they had been sold by said Joseph, to a man by the name of Riley, a stranger to complainants, for $2,150 00. That said Elizabeth and Joseph were irresponsible; have no visible property wherewith to respond to, or indemnify complainants for the value of said negroes; that said sale is in violation and fraud of the interests of complainants, and a serious injury to their rights as remainder men, and unless a strong and speedy remedy is afforded to them, these rights will be wholly lost.

The bill prays that defendants be decreed to secure the proceeds of the sale of said slaves, so that the same may be forthcoming at the death of said Elizabeth, and that they be decreed to enter into bond with good security for the forthcoming of said slaves, at the death of the tenant for life, and

all the other slaves given by said will; "*or that they be decreed to give to complainants such relief as the nature of the case requires.*" There is usual prayer for process, and for "a provisional writ in the premises, suited to their case, requiring of said Elizabeth and said Joseph, bond and security for the forthcoming, at the proper time, of all said slaves, or security for the forthcoming of the proceeds of sale of said slaves sold at the death of said Elizabeth Collins, or some other suitable writ, and on failure to comply with the same, suitable alternative penalty may be provided, which will secure the rights of complainants."

The bill was sworn to and verified by an affiadvit in the following words :

"GEORGIA, } In person came before me, Thomas WILKES COUNTY. } A. Barksdale, who being duly sworn, saith, that the facts above stated, so far as relates to his own acts and deeds, he knows to be true, and so far as relates to the acts and deeds of others, he believes to be true.

Sworn to and subscribed before me,

T. A. BARKSDALE.

W. M. REESE, *Not. Pub.*
13 July, 1857."

Upon application to the Chancellor, at chambers, the following order was made, to-wit :

AT CHAMBERS, SPARTA, GA., *July* 15, 1857.

Read and sanctioned. The prayer of complainants is granted, and it is ordered that Elizabeth Collins and Joseph Collins, defendants, give bond and security for the forthcoming of the negroes sold, Richmond and Felix, at the death of the tenant for life, in the sum of twenty-five hundred dollars, or good security in the sum of twenty-five hundred dollars, for the payment and forthcoming of the proceeds of the negroes sold, at the death of Elizabeth Collins, to the persons entitled to the same; and that said Elizabeth Collins give bond and security in the sum of six thousand dollars for the

production at her death, of said negroes still in her posses-
sion, so that complainants can have their rights.  And the
Sheriffs of Wilkes and Columbia counties are hereby required
to have this order carried out, and on failure of the said Eli-
zabeth to give the bond and security required of her alone,
the Sheriff of Wilkes county is ordered to take in possession
the negroes still in the control of said Elizabeth, and on fail-
ure of said Elizabeth and Joseph Collins to comply with this
order, so far as relates to them both, to make known to the
Chancellor their refusal.  And said Joseph and said Eliza-
beth are hereby ordered, on failure to comply with the order
requiring them to give bond and security for the forthcoming
of the two slaves sold, or their proceeds as above ordered, to
deposit with the Clerk of the Superior Court of Wilkes coun-
ty, as received, whatever proceeds of such sale they have, or
can control, and in default of complying with all the above
terms, they will be attached for a contempt.

JAS. THOMAS,<br>
<i>Judge Sup. Court, N. D.</i>

15 July, 1857.

On the 31st July, 1857, the following order was made by
the Chancellor, to-wit:

W. D. Quinn, and others,  ⎫
      <i>vs.</i>  ⎪
Elizabeth Collins, of Wilkes  ⎬ Bill in Wilkes Superior Court.
county, Joseph Collins, of  ⎪
Columbia county.  ⎭

To the Sheriffs of Wilkes and Columbia counties, greeting :
Whereas, the above stated bill was presented before me,
at chambers, on the 15th day of this month, when it was
ordered by me, as Chancellor, that the defendants give bond
and security for the forthcoming of the negroes sold, Rich-
mond and Felix, at the death of the tenant for life, in the sum
of twenty-five hundred dollars, or good security in the sum
of $2,500 00, for the payment of the proceeds of the negroes

sold at the death of Elizabeth Collins, to the persons entitled to the same, and that said defendants were ordered, on failing to comply with said order, to deposit with the Clerk of the Superior Court of Wilkes county, as receiver, whatever proceeds of such sale they had and could control. And whereas, I have received information from the oath of B. J. Quinn, that said Joseph Collins has acknowledged service of a copy of said original bill and order, and that he and Elizabeth Collins are up to this time in default in complying with said order,

You are hereby required to arrest the body of Joseph Collins, and him safely to keep in close custody, until he shall give bond and good security, in the sum of $2,500, for the forthcoming of the negroes sold, at the death of Elizabeth Collins, to the persons entitled to the same. And the Clerk of Wilkes county is ordered to attach this order to a copy of the original proceedings in office.

Given under my hand this 31st July, 1857.

JAS. THOMAS,
*Judge Sup'r Court, N. D.*

*Sheriff's returns.*

The defendant, Joseph Collins, having refused to give the bond required of him by the order attached to the within bill, I, by virtue of an order issued by James Thomas, Judge of the Superior Courts, Northern circuit of said State, and bearing date 31 July, 1857, (a copy of which has this day been served by me on the said Joseph Collins,) have arrested the body of said Joseph Collins, Aug. 4, 1857.

STEPHEN DRANE, *Dep. Sheriff.*

COLUMBIA CO., Georgia.

The defendant, Joseph Collins, now under arrest by virtue of an order granted by James Thomas, Judge of the Superior Courts of the Northern circuit of said State, having this day complied with said order, and entered into bond required in

said order, I have this day discharged said Joseph Collins from custody, this 14th August, 1857.

STEPHEN DRANE, *D. Sh'ff.*

On 29th August, 1857, defendant moved, at chambers, to revoke said order, and that the proceedings founded thereon, be declared null and void, on the following grounds, to-wit:

1st. Because there is no equity in the bill to authorize said orders, or either of them.

2d. Because there is no oath or affidavit to authorize the granting said orders.

3d. Because said orders were unauthorized by law, and improvidently granted.

4th. Because Joseph Collins is not a proper party to said bill, and cannot be brought to the county of Wilkes to answer, but should have been sued in Columbia, the county of his residence.

5th. Because both of said defendants are required to give bond for the proceeds of the sale of the negroes, when it does not appear which, if either, has them.

6th. Because the last order was granted without process of attachment, and without any opportunity being given to Joseph Collins to show that he was not in contempt.

7th. Because the showing upon which the second order was granted does not appear, and the oath of Quinn, mentioned in said order, was not filed, nor attached to the record, nor shown to defendants.

8th. Because the Sheriff is required to seize and hold the negroes in the possession of Elizabeth Collins, as well for the payment and forthcoming of those sold, as for those in her possession, and about which there is no complaint.

9th. Because bond is required to be given to those persons entitled to the proceeds, without stating who they are, and which cannot be known till the final decree.

10th. Because in the last order, Joseph Collins is required

to give bond for the forthcoming of the negroes sold, and for the proceeds of sale.

After argument, the Chancellor refused the motion on all the grounds taken, and counsel for defendants except.

ANDREWS & POPE, for plaintiffs in error.

REESE; IRWIN & BARNETT, for defendants in error.

*By the Court.*—LUMPKIN J., delivering the opinion.

Was the Court right in refusing to grant the defendants motion, to vacate and set aside the two interlocutory orders which had been previously granted, the one dated the 15th, the other the 31st of July, 1857?

We propose to examine briefly the several grounds upon which this application was made.

1st. In the first place, it is said that there is no sufficient equity in the bill to authorize either of said orders.

Gibson Collins, it seems, had bequeathed to his widow, Elizabeth Collins, a life estate in a number of negroes, with remainder over at her death to the complainants. The testator appointed Joseph and John G. Collins his executors, who duly qualified as such. The bill charges, that after the affairs of the estate were wound up, the property was turned over by the executors to the tenant for life. That she disregarding the rights and interests of the remainder-men, placed two of the negroes, Richmond and Felix, both of them valuable men, in the hands of Joseph Collins, to sell the same and apply the money to the payment of debts. That the said Joseph Collins, well knowing the contents of said will, of which he had been an executor, and which, in its second item, expressly provided for an equal division of said slaves, with the whole of the other personal property to the remainder-men, at the death of the widow, sold the said two slaves to one James Riley, as reported for the sum of $2,150 00. That of

Collins et al. vs. Barksdale et al.

the purchaser the complainants knew nothing. That the slaves were sent from Wilkes to Columbia county, to enable Joseph Collins, the confederate in this transaction, to commit this fraud upon the rights of the remainder-men. The bill charges, that neither Elizabeth nor Joseph Collins have any visible property, and are wholly irresponsible. And the complainants express the apprehension that they will lose their rights, unless some strong relief is awarded to them ; Elizabeth Collins being old and infirm, and that Joseph Collins will spend the purchase money paid for said slaves, and depart the State, unless restrained by the process of the Court.

We should deem it a waste of time to show by argument, that the bill is overladen with equity. Was there ever a case where the interference of a Court of Equity became more indispensible to secure the preservation of property to the uses and ends to which it was appropriated by the former owner ; and where the danger of its being converted to other objects, was more manifest ? It is not a mere probability; the *casus belli* has happened; the property is already wasted.

2d. The second complaint is, that there was no oath made to authorize said orders.

The verification was in the usual form of affidavits appended to bills in chancery. Bills of *quia timet* are in the nature of writs of prevention at common law; and were intended to accomplish the ends of precautionary justice. And it is enough that the party states and swears that he apprehends loss. The party seeks the aid of a Court of equity, because he fears *(quia timet)* some future probable injury to his rights or interests. Here the injury, *we fear*, has already occurred. The affidavit to the bills is sufficiently certain.

3d. For the sake of brevity and to avoid repetition, I shall group together the substance of many of the remaining grounds in the motion. They bring up the main points in the case.

It is said, that the orders which are sought to be annulled,

were unauthorized by law, and improvidently granted ; that the last order was granted without any process of attachment as required by the first, and without any opportunity given to Joseph Collins to show he was not in contempt ; that the Sheriff was required to take and hold the negroes of which Elizabeth Collins has control, as well for the payment and forthcoming of the two sold, as for those of which she has the possession ; that Joseph Collins is required to give bond for the forthcoming of the two negroes sold or proceeds of sale.

In reply to all this, we would remark, that perhaps it is true in England, that under a bill of *quia timet*, no writ can issue to seize the property ; that the Courts there operate upon the person by way of attachment, and in this way, work out the end to be attained, namely, security to the party in peril. This is a vexed question, however, and one that has been much litigated, especially by the Courts in this country. The insular situation of Great Britain, may have much to do with this matter. Shut in within the four seas, parties cannot escape readily, the process of the Court. Here it is very different. Not only are the different States separated from one another, by an imaginary line, but this is true of the United States themselves, as it respects neighboring powers. The facility of evading the slow process of attachment, makes this procedure, therefore, of very doubtful efficacy in this country. One thing is certain, namely, that a Chancellor in England, where property, the right of enjoyment of which is future or contingent, is in danger of being diverted or squandered, it will take it into its own hands, or secure it in such other way as the Court may, in its discretion, under all the circumstances, deem best fitted to the end, and we hold, that the Superior Courts in this State, and the Judges thereof, exercising chancery jurisdiction, possess the same power. Common law remedies, such as bail-attachments, &c., are provided by statute, and are supplied from time to time, as the emergencies of the case may demand. In the

main, however, the Legislature looks to the Courts to mould their equitable proceeding to prevent mischief, and to afford adequate relief to parties.   Upon these general views, therefore, we should reluctantly interfere, to control the discretion of the Chancellor, unless flagrantly abused in a case like this.   Instead of answering the bill, the defendants have seen fit to contest it on technical grounds.   They are not entitled to the special indulgence of a Court of Equity, under such circumstances.

It has occurred to this Court, that the symetry of the law would be best maintained by simply requiring of the defendants in the first instance to give bond with sufficient security to stand to, abide by and perform the final decree to be rendered in the case.   This would afford ample protection to the complainants, and less than this could not be required of the defendants, and upon failing or refusing to do this, the property should be taken into the custody of the Court, to be managed by its own agents and officers.   We shall extend this privilege to the present defendants.   Upon the case made by the bill, the jury would decree, that the two negroes sold, or their proceeds, be secured to the remainder-men, at the death of the tenant for life, and this obligation should be imposed upon both Elizabeth and Joseph Collins, in as much as they are in *pari delicto*, as to this transaction, and Elizabeth Collins should be compelled to give bond and security for the forthcoming of the other slaves in her possession, at her death.   But we are anticipating unnecessarily, as we have no doubt that the right judgment will be rendered by the proper tribunal, in the premises, and if the bond is now substituted, which we suggest, it would afford ample security, that the decree will be performed.

4th.  The ground that Joseph Bond was not a proper party to the bill, and that he could not be brought to the county of Wilkes, but should have been sued in Columbia, the county of his residence, is abandoned.

5th.  The next objection is, that both of the defendants are

required to give bond for the proceeds of the sale of the two negroes mentioned, when it does not appear which, if either, has them.

Elizabeth and Joseph Collins, were joint in the breach of trust; were confederates in the illegal transaction. It is meet and proper therefore, that they should be held jointly liable for the consequences.

6th. Another irregularity complained of is, that the showing made to the Chancellor, on which he granted the second order, does not appear in the proceedings, and that the oath of Quinn mentioned in said order, has not been filed or attached to the pleadings, nor has it been shown to the defendants.

It is recited by the Chancellor, in the second order, that he had received information on the oath of B. J. Quinn, that Joseph Collins had acknoledged service of the original bill and order; and thus he and Elizabeth Collins, up to that time, to-wit, the 31st day of July, 1857, were in default in complying with said order. The substance of the oath is contained in the recitals of the second order, whether any record of it was made, does not appear. Its truth has not been controverted, and that is enough.

7th. Again, it is suggested parenthetically, rather than alleged, that it is not charged in the bill, neither does it appear by proof, that Elizabeth Collins has control of the slaves in which she has a life estate.

The bill charges expressly, that "all of the negroes were, by the executors, put into the possession of Elizabeth Collins, as the estate of 'Gibson Collins" (the testator,) "was wound up, and there remained until some short time since, when the said Elizabeth Collins, disregarding the rights and interests of your orators and oratrixes, placed two of the negroes, Richmond and Felix, both valuable men, in the hands of Joseph S. Collins, to sell the same and pay the debts, &c."

This extract from the bill is a sufficient, and the best reply to the objection.

8th. The only remaining ground is, that the bond is required to be given to those entitled to the proceeds, without stating who they are, and which cannot be known until final decree. It is a trite maxim, that that is certain which can be made certain. The complainants in the bill, whose names are set out, "allege and charge, they are in the manner above *stated*, interested as remainder-men, and have been injured and damaged in their remainder rights, as above charged, &c."

Of course, then, they are the persons entitled ultimately to the proceeds of the sale of the two negroes conveyed to Riley, and are the obligees of the bond.

Judgment affirmed.