[Underwood v. Underwood.]

# Underwood *v.* Underwood.

*Bill for an Accounting, and to Declare Rights of Remaindermen.*

(Decided June 10, 1909.—50 South. 305.)

1. *Appeal and Error; Time of Taking.*—An appeal from a decree on demurrer to a bill must be taken within thirty days from the rendition of the decree or it will be dismissed.

2. *Same; Effect of Appeal; Jurisdiction of Lower Court.*—The trial court may annul the allowance of an appeal from the sustaining of the demurrers to the bill with leave to amend, allowed by the register at a time when no appeal could be taken, and may dismiss the bill if the complainant declines to amend, and stands on the bill as filed.

3. *Equity; Leave to Amend; Failure; Effect.*—Where a complainant is granted leave to amend within a specific time after demurrer is sustained to a bill, if he fails to amend, the bill should be dismissed after the expiration of such time.

4. *Same; Protection of Future Rights in Personalty.*—Where personal property is in danger of loss, deterioration or injury in the hands of one entitled to the present possession, equity will protect the future right of enjoyment therein on a bill quia timet.

5. *Wills; Gifts of Personal Property; Estates Created.*—Where a bequest is made of personal property to one for life with the remainder over, and the use of such property results in its consumption necessarily or ordinarily, the gift ordinarily amounts to an absolute gift, though this is not necessarily true in all cases.

6. *Pleading; Facts or Conclusions.*—A bill alleging generally that the life tenant will convert all the property, without stating facts justifying the conclusion and praying for an accounting for the value of the property, and a sale thereof, is insufficient.

7. *Estates; Life; Right of Life Tenant.*—A tenant for life of real estate is entitled to the rents and profits arising therefrom during the term.

8. *Same; Personal Property.*—A life estate in personal property confers on the life tenant the right to consume such article as cannot be enjoyed without being consumed as well as to wear out by use such as cannot be used without wearing out, and the extent of the liability over to the remaindermen must be governed by the intention of the donor.

9. *Same; Security; Sale.*—Where a will devises personal property to one for life with a remainder over, the intenton of the testator, to be determined from the contents of the whole instrument, controls the right of the respective legatees, and also controls as

[Underwood v. Underwood.]

to whether the property shall be sold or whether the life tenant shall give security for the preservation of the same.

10. *Same.*—Where a farmer devises part of his real estate and all of his personal property to his wife for life with the provision that at her death the personal property should go to his son, the wife was entitled to use for her own benefit all the personal property and the remainder, if any, at her death, passes to the son, and he could not require the wife to give security for the preservation of the personalty or require a sale thereof.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Bill by W. H. Underwood against Piety Underwood to require a sale of personal property for his benefit as remainder, or to require security given therefor. From a decree dismissing the bill complainant appeals. Affirmed.

GUNTER & GUNTER, for appellant. The demurrer was sustained on every ground and unless there is some ground which goes to the whole bill on its merits, the order dismissing the bill must be reversed.—*House v. Mullen*, 22 Wall. 42. Where there is a future right of enjoyment of personal property courts of equity will interpose and grant relief upon a bill quia timet where there is danger of loss or deterioration in the hands of the party who is entitled to the present possession.— *Bethea v. Bethea*, 116 Ala. 271; *Rommey v. Green*, 18 Ala. 771; *Lyde v. Taylor*, 17 Ala. 270; *Nance v. Cox*, 16 Ala. 129. A specific bequest for life of property necessarily consumable in the use passes the entire interest, but if such property is included in a general residuary request for life it must be sold and the principal preserved for the remainderman.—16 Cyc. pp. 615-618, and cases cited; *Howe v. Dartmouth*, 7 Ves 137; 32 Eng. Rep. Reprint, 56.

MARKS & SAYRE, for appellee. A remainderman of personal property cannot require of the life tenant a

[Underwood v. Underwood.]

bond for the forthcoming of the property when the remainderman becomes entitled to it, unless waste or danger of waste is shown.—*Bethea v. Bethea*, 116 Ala. 265. It is only when a bequest of a life interest is residuary, that the property will be sold, and the interest only given the life tenant.—24 A. & E. Ency. L. (2nd. Ed) 439-40. A specific bequest of chattels whose use consists in their consumption, gives the absolute title to first taker.—24 A. & E. Ency. (2nd Ed.)) 439. Rents falling due after the death of the testator, follow the reversion, and belong to the devisee, subject only to interception for payments of debts of testator.—*Palmer v. Steiner*, 63 Ala. 400.

MAYFIELD, J.—This was a bill filed by a remainderman as to personal property, to require an account of the items and value of the property received by the life tenant under the will of the testator, which also vested a remainder in the complainant, and prayed that all of said property, or such of it as should be, be sold and converted into cash in order to secure to orator, as remainderman, his rights under the fifth clause of the will, and that the use of the property not sold, and the interest of the proceeds of that sold, be secured to the life tenant, and that the property not sold and the net proceeds of that sold be secured to orator as remainderman. The life tenant, who was the wife of the testator (the complainant, remainderman, being the son of the testator), interposed demurrers to the original bill, which were sustained upon a hearing, with leave to amend on the 9th day of August, 1907. On the 20th day of August, 1907, in response to a request, the court assigned definite grounds for sustaining the demurrers. The order states that each and every ground of the demurrer is well taken, except the one which recites that the allegations of

the bill are merely a statement of the conclusions of the pleader. Complainant amended his bill on the 30th day of August, 1907, and to the amended bill the respondent again interposed her demurrers, upon the same grounds interposed to the original, and certain additional grounds. This demurrer was heard on the 7th day of September, 1907. The demurrer was sustained by the court, and the complainant was allowed until the first day of the next term in which to amend his bill. On the 24th day of October complainant applied for an appeal and gave security for the costs, and notice of the appeal was on the same day issued by the register and served upon the respondent. On the 13th day of November, 1907, the judge of the court set aside or annulled the order allowing an appeal from the decree on demurrer, on the ground that it was taken after the lapse of 30 days, and, the complainant standing by his bill and declining to amend, the judge dismissed the bill out of the court and taxed the complainant with the costs. From this decree of dismissal the appeal is taken, and complainant here assigns as error the sustaining of the demurrers to the original bill and to the amended bill and the dismissing of the bill without prejudice.

The appellee moves to dismiss the appeal for that it was not taken within the time required by law, in that the first appeal allowed by the register was more than 30 days after the sustaining of the demurrer, and for that, after this appeal was taken, the judge or chancellor had no power or authority to make any further orders or to set aside the appeal allowed by the register. It requires no argument or authority to show that, if the first appeal is the only one shown by the record, it should be dismissed, because it is upon a decree on demurrer and was taken more than 30 days from the rendition of the decree; but, of course, no appeal could be taken at the

time the attempt was made by the complainant and the register to perfect the appeal. It was wholly void because not authorized. The trial court, or this court, could not give or accord it any validity, and there was nothing improper in the trial court's disregarding it. Consequently the appeal is taken from the decree of November 13, 1907.

It does not appear that any application was made by the complainant to be allowed to further amend; but it is affirmatively shown that he declined so to do. It likewise does not appear that he requested that the bill be dismissed without prejudice or upon the motion of the complainant; all that the record shows being that the complainant had failed to amend his bill from the 7th day of September, 1907, until the 13th day of November, 1907, and that he was allowed time within which to amend his bill, when the demurrer was sustained., There was no other course open to the trial court than to dismiss the bill; the demurrer having been sustained, and the complainant declining to amend. We find no error in any of the orders or decrees of the trial court in this matter. The bill, we think, is wholly insufficient as one upon which to grant the relief prayed, or any other relief, so far as its allegations show.

It is true, as stated by this court in the case of *Bethea v. Bethea,* 116 Ala. 271, 22 South. 563 (quoting from the language of Mr. Justice Story), that: "Where there is a future right of enjoyment of personal property, courts of equity will now interpose and grant relief upon a bill quia timet, where there is any danger of loss or deterioration, or injury to it in the hands of the party who is entitled to the present possession"—citing a number of Alabama cases. We cannot agree with counsel for the appellant that the case made by this bill is as strong as, or stronger than, any of the cases referred to. It appears

from the bill that the testator was the husband of the life tenant and the father of the remainderman, and that, after disposing of his real estate by the fourth item of his will, he gave all his personal property to his wife, the respondent, during her life, and at her death, to complainant, her son. The language of the will is as follows: "Item 4. I further hereby will to my wife, Piety J. Underwood, for her use and benefit during her life, all of my personal property including horses, mules, cattle, hogs, wagons, buggy, etc., and all household and kitchen furniture, and at her death said personal property I will to my son, William H. Underwood."

The bill contains an inventory of the property, which is made an exhibit, which shows one mule, one horse, cow and calf, a wagon, a buggy, and harness, from $125 to $140 in cash, the proceeds of the sale of cotton raised upon the lands, cotton seed, plow tools, 50 bushels or more of corn, fodder, etc., a watch and chain, and household and kitchen furniture. It clearly appears that it was the intention of the testator that his wife should have the use of this property during her life, and that if anything remained at her death it would go to the complainant or remainderman. To sell this property and allow the wife the interest only would entirely defeat the purpose of the will; while to require her to give bond or security for the same, to the remainderman, to secure his rights under the will, might entirely deprive her of any benefit to be derived from the property, and might impose upon her a burden which she could not discharge. The use of by far the greater part of the property—that is, the most valuable portion of it—would of necessity consume the property. The life tenant may outlive the mule, the horse, or the cow; and the use of the wagon, buggy, and harness, the cash, cotton seed, corn, and fodder, and farming utensils, for any great length of time,

of course would consume them. It is this use, during her life, whether that period be long or short, to which she is entitled, and to take this property and sell it, or to sell the other property which might not be destroyed by its use, such as household and kitchen furniture, would be something clearly beyond the intention of the testator.

If any wrong or fraud, on the part of the life tenant, was shown, or if it appeared that the property was being claimed by some person not entitled to it, or that one was claiming the interest of the remainderman rather than that of the life tenant, there would be some ground for equity to interpose, to preserve the property; but interposition of a court of equity, so far as appears from this bill, would defeat the rights of the life tenant, rather than protect the rights of the remainderman. It certainly cannot be a reason for depriving the life tenant of property, or of the use of property, to which she is legally and equitably entitled, that that is the only property she has, and that if she dies soon enough some other party will have a reversion or remainder in the same property. Nor is it any ground for such a deprivation that the life tenant has denied the remainderman the right to the possession of the property, or that she has converted a part of it. Both in law and in equity she was entitled to the possession of all the property, and was entitled to convert a part of it, because, by its very nature and character, the use thereof by the life tenant would of necessity consume it—and this is especially true of all the most valuable—if the life tenant should live long enough. In cases of bequests of specific things, such as the most valuable in this case—horses, mules, wagons, buggies, corn, cotton seed—for the use and benefit of a person for life, the use of such property of necessity consists in the consumption of it. Consequently

a gift of such property for life, in most cases, though not necessarily in all, amounts to an absolute gift, for the very apparent reason that the use of the property and the property itself cannot exist separately. It is true that the bill contains a general averment that the life tenant would convert it all; but no facts are shown to justify this presumption or conclusion, and it is something that the trial court nor this court could not know. It is a conclusion to be drawn from the facts, and there are certainly no facts set forth which would justify the conclusion.

The inventory shows one article to be cash arising from rent of land of deceased. The bill does not show whether the respondent was given a life estate in these lands or not. If she was, she was entitled to the rents; that is to say, if she had the same interest in the lands that she did in the personal property. This was the very interest which she acquired. Consequently it was her property, and as to it the complainant would have no interest. On the other hand, if the lands belonged to the complainant after the death of the testator, then the item has no place in this bill. Personal property is so transitory and destructible in its nature that the right to enjoy it during life necessarily carries with it privileges which do not belong to the grant of life estate in lands. A life estate in personal property undoubtedly gives the donee the right to consume such articles as cannot be enjoyed without consuming them, as well as the right to wear out, by use, such as cannot be used without wearing out. The extent of liability over, to a remainderman, is to be governed by the intention of the donor, as manifested in the instrument which evidences the gift; and, if the parties claim under a will, the intention of the testator is to be collected, not from the particular clause, but from the whole instrument. Per-

[Underwood v. Underwood.]

sonal property is either wholly consumed or at least impaired by use. The person entitled to the use has the right to enjoy and use all the property, according to its character and nature. Those to be consumed become his absolute property, while things not to be consumed may be put to the use for which they were designed, and at the termination of the life estate they go to the remainderman.—*Holman's Case,* 24 Pa. 174; *Stoner & Barr's Case,* 2 Pa. 428, 45 Am. Dec. 608; *Baskin's Case,* 3 Pa. 304, 45 Am. Dec. 641; *Arminger v. Reitz,* 91 Md. 334, 46 Atl. 990; *Sutphen v. Ellis,* 35 Mich. 446.

We know of no reason why the intention of the testator should not control, in determining what rights, interest, etc., the respective legatees shall take, in cases like this—whether the property shall be sold for its preservation for the remainderman, whether the life tenant shall be required to give security for its preservation and its delivery to the remainderman at the termination of the life estate. While the entire will is not set out in this case—and consequently we cannot construe it as a whole—yet, from what does appear, it seems that a farmer left a will, by which he devised and bequeathed a part at least of his lands to his wife, for life, with a remainder to his son, and all of his personal property (some of which is specified by items, showing that they were necessary for farming and housekeeping) to his wife, during her life, with a remainder to his son. The conclusion is irresistible that it was not intended that this property should be sold, and the interest of the fund, only, be used by the wife, the principal and accumulation to go to the remainderman; but that the wife should use it, during her life, for the purposes for which it was suitable and intended to be used, and for her own benefit during her life, and that the remainder, if any, at her death, should go to his son. To sell this property

for the purposes sought in this bill, or to require the life tenant to give security for its preservation and delivery, would clearly defeat the intention of the testator, rather than promote it.

The bill was unquestionably subject to demurrer interposed, and, complainant declining to amend, no other course was open but to dismiss it; and, if any injury resulted from dismissing his bill, it was his own fault.

The decree of the lower court is affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.