[Sac. No. 265.   Department Two.—December 2, 1897.]

A. H. CREW and F. C. LUSK, Respondents, v. LIZZIE E. PRATT et al., Respondents.  DANIEL SULLIVAN et al., Appellants.

ESTATES OF DECEASED PERSONS—TRUST UNDER WILL—CONSTRUCTION—ANNUITIES—COMMENCEMENT AT DEATH OF TESTATOR—TIME OF PAYMENT.—
Where a trust created under a will has but seven years to run, and the will provided that the beneficiaries should receive annuities from the trustees for seven years, and there appears no express intention to fix upon another time for the commencement of the annuities, they must be held to commence at the decease of the testator, in accordance with section 1368 of the Civil Code; and a clause in the will providing for payment of annuities as soon as the trustees should have sufficient funds available for that purpose is to be construed as relating only to the time of payment, and not to the date when the annuities begin to run.

ID.—CLASSIFICATION OF ANNUITIES—FIRST CHARGE—FAILURE OF FUNDS—RESORT TO GENERAL ASSETS.—The fact that the annuities were classified, and six of them were made subordinate to the first four, which were made

a first charge upon any moneys in the hands of the trustees, does not require that the charge upon the revenue of each year shall be borne only by the revenue of that year, or affect the obligation of the trustees, to pay each and all of the annuities as of the date of the death of the testator, whenever and so long as there are sufficient funds or assets of the trust estate to meet them; and, under subdivision 3 of section 1357 of the Civil Code, if the fund or property out of which any annuities are payable fails, resort may be had to the general assets, as in case of a general legacy.

ID.—TEMPORARY FAMILY ALLOWANCE—PAYMENTS AFTER RETURN OF INVENTORY —SETTLEMENT OF FINAL ACCOUNT—ANNUITY TO WIDOW—OFFSET.—Where a family allowance was made to the widow prior to the return of the inventory, although such allowance is in its nature temporary, and only continues until the return of the inventory, and although payments made thereon after the return of the inventory are at the peril of the executors, yet the court has power to credit the executors with any reasonable sum of money thus expended, and where they are credited therewith in their final account, and no appeal is taken from the order of settlement, the question of family allowance to the widow is adjudicated, and the adjudication cannot be attacked collaterally, nor can any offset be claimed to an annuity payable to the widow from the date of the death of the testator, on account of payments made to her for family allowance after the return of the inventory.

APPEAL from an order of the Superior Court of Butte County, denying a new trial. John C. Gray, Judge.

The facts are stated in the opinion.

Charles F. Hanlon, and E. L. Campbell, for Appellants.

F. C. Lusk, and McKinstry & McKinstry, for Respondents.

SEARLS, C.—This action is brought by the plaintiffs, trustees under the last will of O. C. Pratt, deceased, to obtain a decree of the court determining whether an annuity, provided in said last will to be paid to Lizzie E. Pratt, widow of said O. C. Pratt, deceased, shall be so paid from the date of the death of said deceased, viz., from October 24, 1891, or from the date of the decree of distribution, viz., May 19, 1893.

The defendants are the heirs at law of said O. C. Pratt, deceased, and devisees and legatees under said last will.

The court, by its final decree, directed the said plaintiffs, trustees, to pay the defendant, Lizzie E. Pratt, said annuity from and after the date of the death of said O. C. Pratt, viz., the

twenty-fourth day of October, 1891, and continuing for seven years, etc.

Lucy C. Goodspeed and Annie M. Pratt and Orville C. Pratt, second, minors, by their guardian, E. C. Campbell, moved for a new trial, which was refused, and this appeal is taken from such order denying a new trial. O. C. Pratt, as before stated, died October 24, 1891, testate. His last will was admitted to probate in November of the same year at Butte county. The estate, consisting largely of real estate situate mainly in the counties of Butte and Glenn, was valued at about one million dollars.

After bequeathing and devising certain portions of his estate to sundry of his relatives, the said O. C. Pratt by his said last will gave, bequeathed, and devised to the plaintiffs, A. H. Crew and F. C. Lusk, all the rest and residue of his estate, real, personal, and mixed, in trust, to take possession thereof, to pay when due all lawful charges and taxes thereon, and to hold and manage the same for seven years from and after his death, to lease either for a money rental or in kind in such manner as to them might seem most advantageous, etc. And also to "provide and turn over to Mrs. Lizzie E. Pratt, my wife, the sum of seven thousand five hundred dollars ($7,500) each year for the following seven years, for her maintenance, the same to be paid in semi-annual installments of three thousand seven hundred and fifty dollars ($3,750) each, the first as soon after my decease as sufficient funds for the purpose shall come into their possession, and the remaining ones at the end of every six months afterward."

The testator then proceeds to provide annuities in different amounts to be paid in like manner to three other annuitants for seven years. The will then proceeds as follows: "The foregoing payments and each of them are, after the payment of the annual taxes of the estate, to be a first charge upon and made out of any money to come into the hands of said trustees on account of my estate, as well as from rents, the sale of grain or other personal or mixed property belonging to and to belong to my estate."

The will then provides for sundry other payments to be made for seven years and to be paid annually to six persons therein named. The payments to the six persons last named "are to be made subsequent and subordinate to the first four named,"

etc.· It was further provided that at the end of seven years the
trustees should convey the property as therein specified.

. The executors named in the will and codicil thereto adminis-
tered the estate, filed their final account and petition for dis-
tribution. The former was settled and allowed, the estate dis-
tributed in accordance with the terms of the will, and the ex-
ecutors discharged. The trustees of the trust created by the
will took possession of the trust estate, and have since admin-
istered the trust. The decree of distribution was entered May 9,
1893, and no appeal was ever taken therefrom.

1. The question of the validity of the trust in the will of O.
C. Pratt and in the decree of distribution does not seem to have
been raised in the court below, and is only briefly discussed here.
That question is disposed of in favor of the validity of the trust
in a case between the same parties, decided herewith and num-
bered "Sacramento No. 321," *post*, p. 139. It need not be further
mentioned here.

2. Appellants contend that the decree of distribution makes
the annuity payable at such time after May 19, 1893· (the date)
of said decree), as the trustees may have sufficient funds in their
hands applicable to that purpose.

The decree of distribution, following the will, creates Crew and
Lusk trustees to take possession of and manage certain property
for seven years from the death of the testator, and at the expi-
ration of that period to convey the property to the devisees
therein mentioned.

They are commanded to pay over to Mrs. Lizzie E. Pratt, the
widow of the testator, "seven thousand five hundred dollars each
year for the following seven years for her maintenance." The
first semi-annual payment is to be made "as soon after his de-
·cease as sufficient funds for the purpose shall come into their
possession."

As the trust has but seven years to run, and the beneficiaries
were to receive annuities from the trustee for seven years, it is
fair to conclude that the testator intended the annuities, like the
trust, to commence at the date of his death. There is certainly
nothing in the will or decree fixing any other date as the time
of commencement. The clause in the will ·and decree, to which
counsel refer as evidence of a contrary intent, relates to the time

of payment (viz., as soon as they should have sufficient funds, etc.), and not to the date when the annuities should begin to run. Finding then no express intention to fix upon another time, the latter clause of section 1368 of the Civil Code applies, which is as follows: "Annuities commence at the testator's decease."

There was no error in the construction of the court below fixing the death of the testator as the date at which the annuity commenced.

3. It is further urged by appellants that the judgment is erroneous, and a new trial should be granted, for the further reason that the alleged trust created by the will of O. C. Pratt distinctly requires that the charge upon the revenue for each year shall be borne by the revenue of that year and not otherwise.

The reasons advanced in support of this position are: (*a*) That under the will the trustees were to take possession of and manage the estate, and to pay to the annuitant, Mrs. Lizzie E. Pratt, seven thousand five hundred dollars per annum in semi-annual installments, "the first as soon after my decease as sufficient funds for the purpose shall come into their possession"; (*b*) That the annuities were classified, and six of them were made subordinate to the first four, which said first four annuities "shall be a first charge upon and made out of any money to come into the hands of said trustees on account of my estate, as well as from the sale of grain or of other personal and mixed property belonging to and to belong to my estate."

We fail to appreciate the conclusion which the learned counsel drew from the premises. It will be observed that the first payment is to be made whenever, after the payment of the legal obligations of the testator, his funeral expenses and taxes, the trustees shall have sufficient funds in their hands for that purpose.

There is no intimation that if sufficient funds shall not be forthcoming to pay the annuities either in full or in part in any one year, that the annuitants were to forego such payments, or that the trustees were to be absolved from making them as soon as funds came into their hands applicable to that purpose.

Again, the first four annuities are made a first charge (after payment of taxes) upon and to be paid out of any money to come into the hands of the trustees from any source, on account of the

estate, whether from "rents, sales of grain, or other personal and mixed property belonging to and to belong to his estate."

"An annuity is a bequest of certain specified sums periodically; if the fund or property out of which they are payable fails, resort may be had to the general assets, as in case of a general legacy." (Civ. Code, sec 1357, subd. 3.)

This provision of the code, like that providing when annuities are to commence, was doubtless adopted to cut off what had previously been a fruitful source of litigation. Under it and the trust provisions of the will and decree of distribution, we are of opinion the annuitants and each of them are entitled to the payment of the specific sums awarded them, so long as the income of the property or assets of the trust estate are adequate to that end.

4. The further objection is made that certain sums of money paid by the executors of the will of O. C. Pratt, deceased, to Lizzie E. Pratt subsequent to the return of the inventory, viz., subsequent to April 4, 1892, as a family allowance, was paid to and received by her without authority in law, and should be applied upon the annuity claimed by her under the will of the testator.

The facts upon which the question turns may be briefly stated as follows: "On the seventh day of December, 1891, Lizzie E. Pratt filed her petition for a family allowance of fifteen hundred dollars per month for the support of herself and infant son, O. C. Pratt, Jr., to run from the twenty-fourth day of November, 1891, the date of the death of her husband, O. C. Pratt.

The petition showed that O. C. Pratt left a last will, which had been admitted to probate and executors appointed thereunder, but that no inventory of the estate had been returned; that the estate was of the value of one million dollars and yielded a revenue of thirty thousand dollars per annum; that she had only a small amount of property (describing it) "and such rights as she may be adjudged to have in the estate of her said husband under his will and by virtue of her community rights thereto; that neither she nor her said son had any present income," etc.

On the same day the superior court made an order containing the usual recitals, and allowing her the sum of twelve hundred and fifty dollars per month for the support of petitioner and her said infant son, to run from November 24, 1891, and payable

monthly "until the further order of the court." This sum was
paid to her monthly until the date of the final decree of distri-
bution, viz., until May 19, 1893, a period of say, eighteen
months. The inventory of the estate was returned April 4,
1892.

The sums of money so paid were included in the final account
of the executors, and such account, after due notice, was regu-
larly settled and allowed without objection, by order of the court
duly made and entered; no appeal has been taken from said
order, and the same is in full force and effect, unchanged and
unmodified.

Upon the death of a person, his widow and minor children,
until letters are granted and the inventory is returned, are enti-
tled, among other things, "to a reasonable provision for their
support, to be allowed by the superior court or a judge thereof."
(Code Civ. Proc., sec. 1464.)

In *In re Lux*, 100 Cal. 593, the court, in speaking of a family
allowance under section 1464, *supra*, said that "the allowance
here provided for is intended to be in the nature of a preliminary
or temporary allowance, not extending beyond the return of the
inventory," etc., and held that an allowance under that section
does not continue beyond the date of the return of the inven-
tory.

We must conclude, therefore, that the order of a family allow-
ance in this case, under the order of December 7, 1891, ceased
April 4, 1892, when the inventory was returned.

The argument which appellants advance on this state of the
case is, that as there was no formal order made for the payment
of a family allowance after the return of the inventory, the exec-
utors were without power to pay any money to the widow for the
support of herself and infant son, and that the court was with-
out authority to approve such payments in the settlement of the
account of the executors, and, as a conclusion from this argu-
ment, it is claimed that the trustees named in the will may re-
fuse to pay the annuity therein provided for, or may set off the
sum paid by the executors as a family allowance and approved
by the court against the sum due upon the annuity. We do not
assent to the soundness of the argument or concur in the conclu-
sion deduced therefrom.

When, after the coming in of the inventory, the executors continued to pay the widow the same allowance for family support which they had previously paid under the order of the court, they did so at their peril and were subject in their final settlement to have their account therefor surcharged by those in interest, and disallowed by the court if it found it to be improper or unreasonable.

The power of the court to credit the executors in a proper case for money paid under such circumstances was enunciated in *Miller v. Lux*, 100 Cal. 609, *In re Lux*, 100 Cal. 606, and *In re Lux*, *supra*. In those cases there had been an order for a family allowance, before the coming in of the inventory, of two thousand five hundred dollars per month, under which the executors had continued to make payments as though the order was still in force long after the inventory was filed. A subsequent order had been made allowing the widow one thousand dollars per month.

The court below, in settling the account of the executors had refused to allow the executors anything for moneys paid the widow subsequent to the coming in of the inventory and prior to the allowance of one thousand dollars per month, etc. This court in *In re Lux*, *supra*, said that: "In the matter of paying a family allowance, 'the administrator is not required to wait for an order of court, but may make the necessary expenditures as the exigencies occur, and the court will allow such sums as may be reasonable in the settlement.'" (Citing Woerner on American Law of Administration, sec. 92; *Sawyer v. Sawyer*, 28 Vt. 248; *Simmons v. Byrd*, 49 Ga. 284.)

In *Miller v. Lux*, *supra*, at pages 616 and 617, this court, on a motion for rehearing, said in substance that the order appealed from in that case allowing one thousand dollars per month having been reversed, it would become the duty of the court below, in settling the accounts of the executors, to credit them "with such sum as it finds was reasonably and properly advanced by them for the purpose named," whether it was a sum greater or less than one thousand dollars per month. In short, that they should be credited with such sum paid by them as was reasonable for the support of the widow.

It follows that the court in the present instance had jurisdic-

tion to determine what was a sufficient sum for the support of the widow, and having done so, and credited the executors with the sum of twelve hundred and fifty dollars per month paid by them for that purpose, and settled their final account containing such items, and no appeal having ever been taken from such order of settlement, the whole question is foreclosed and cannot be attacked collaterally as is attempted here.

This view renders it unnecessary to inquire whether or not, if Lizzie E. Pratt had received from the executors as a family allowance funds to which she was not entitled, the amount thereof could be deducted from her annuity by the trustees under the will, between whom and the executors there was and is no privity.

The court below found that the family allowance was not paid or received in lieu of the annuity, and found against the appellants here upon all the issues upon which an estoppel could be predicated.

The findings cover all the material issues in the case, and are supported by the evidence.

We recommend that the order of the court below denying the motion for a new trial be affirmed.

Belcher, C., and Britt, C., concurred.

For the reasons given in the foregoing opinion the order of the court below denying the motion for a new trial is affirmed.

McFarland, J., Temple, J., Henshaw, J.

Hearing in Bank denied.