[Sac. No. 3431. In Bank.—December 22, 1924.]

CLARA E. NEWPORT et al., Appellants, v. ORA D. HATTON, as Executrix, etc., et al., Respondents.

[1] JUDGMENTS — FRAUDULENT SALE FOR TAXES — LIFE TENANCY — MINOR REMAINDERMEN.—Where real property is held, under a decree of distribution, in life tenancy with remainder over in fee to minors, which decree forbids encumbering the property during the life tenancy, and the life tenant in order to raise money on the property, under advice of counsel, permits the property to be sold for taxes and purchased by one appointed by the attorney,

---

1. Bills by infants to impeach or avoid judgments, note, 112 Am. St. Rep. 198. See, also, 15 R. C. L. 704; 14 Cal. Jur. 165.

which purchaser then brings an action against the life tenant and the minors, said attorney preparing the complaint, procuring the appointment of a guardian *ad litem* for the minors, appearing in the action for the guardian and in fact controlling both sides of the suit, the court not being advised that said attorney had entered into an arrangement with the life tenant by which he was to appear for the minors, under the circumstances, the judgment for the plaintiff procured in said suit through fraud and collusion was void as against the minors.

[2] ID.— MINORS—RIGHTS IN SUIT — FRAUDULENT JUDGMENT.— An infant is ordinarily bound by acts done in good faith by his guardian *ad litem* or counsel in the course of a suit, to the same extent as a person of full age, but where both sides of a suit in which minors are defendants are controlled by the same attorney and the true facts are not presented to the court, and by fraudulent concealment the rights of the minors are not presented for adjudication, a decree for the opposing party is fraudulent and void as to them.

[3] TAX SALES—LIFE TENANT—REDEMPTION.—Where a life tenant of real property whose duty it is to pay taxes levied on the property permits it to be sold for taxes and purchased by one named by an attorney with whom she has arranged for the sale, the purchase amounts simply to a payment or redemption, and a tax deed under the sale has no greater effect against the remaindermen than a tax receipt.

[4] STATUTE OF LIMITATIONS—NATURE OF ACTION—DETERMINATION OF. In determining whether the statute of limitations has run against an action it is necessary to ascertain the nature of the action, which may be done through a scrutiny of the allegations of the complaint, and, in a measure, by the character of the relief sought and necessarily incident to the purpose and final determination of the action.

[5] ID.—GRAVAMEN OF ACTION—CLOUD ON TITLE—FRAUD.—Where the gravamen of an action is that a judgment is a cloud upon the title

---

2.  Rights, powers, and duties of guardian *ad litem,* note, 97 Am. St. Rep. 995. See, also, 14 R. C. L. 287.

3.  Duty of life tenant to pay taxes, notes, 32 L. R. A. 744, 805; 17 A. L. R. 1384.

Liability of life tenant for taxes, note, Ann. Cas. 1917B, 944. See, also, 17 R. C. L. 636.

4.  Nature or form of action as determining limitation applicable, note, 12 Ann. Cas. 175. See, also, 17 R. C. L. 951; 16 Cal. Jur. 429.

5.  Fraud as injury to property for purpose of applying statute of limitations, note, 19 Ann. Cas. 936. See, also, 17 R. C. L. 715; 16 Cal. Jur. 449.

of plaintiffs to certain real property, for which reason its cancel-
lation is asked, although fraud and collusion in the procuring of
the judgment are alleged, they are not controlling in determining
what statute of limitations applies, and such an action does not
fall within the bar of the three year period provided by sub-
division 4 of section 338 of the Code of Civil Procedure, relating
to actions for relief on the ground of fraud.

[6] ID.—POSSESSION—STARTING STATUTE RUNNING.—In an action by
remaindermen to establish a paramount interest in real property,
and to remove a cloud from the title based on a fraudulent tax
sale and fraudulent procurement of judgment in an action to
quiet title, which tax sale and judgment were carried through by
an attorney with the consent of the life tenant, the question of
possession of the property is not involved in the action, for the
life tenant could not, by her dealings with the life estate, make
her own or a grantee's possession adverse to that of the re-
maindermen so as to start the statute of limitations against them
during the life of the estate.

[7] ID.—ADVERSE POSSESSION—DEATH OF LIFE TENANT.—The statute
of limitations in such an action does not begin to run against the
parties in remainder until after the death of the tenant for
life who has aliened the fee. Until that event takes place, the
possession of the purchaser is not and cannot be adverse to the
remaindermen or reversioners.

[8] ID.—TITLE—ACTION AGAINST HOSTILE CLAIM.—A claim of title,
even of record, unaccompanied by adverse holding, will not start
the statute; and a party holding the paramount claim to a legal
title is not called upon to take action against a hostile claim
which is not of a nature to ripen into a valid adverse title.

[9] ID.—PLEADING—FRAUD.—The rule is that where an action for
fraud is brought after the expiration of the statutory period of
three years the complaint must show the facts from which the
court may determine whether or not the fraud was in truth dis-
covered only within three years before the commencement of the
action.

[10] ID.—STARTING OF STATUTE—LACHES.—In such a case, although
one of the main grounds of the action is fraud, whereby the de-
fendants have obtained the legal title to the land in controversy,
and the chief contention between the parties may center about
the fraud alleged, where the plaintiffs have pleaded facts which

---

6. Adverse possession by life tenant against remainderman, note,
14 Am. St. Rep. 635.

7. See 17 R. C. L. 982; 16 Cal. Jur. 372.

8. See 1 R. C. L. 692; 1 Cal. Jur. 570.

9. See 17 R. C. L. 856; 16 Cal. Jur. 621.

show, as matter of law, that they are the owners of the remainder interest in the land, and part of the relief sought is that their title be quieted, the running of the statute of limitations is not dependent upon the discovery of the fraud, but on the termination of the life estate; and whether or not plaintiffs have been guilty of laches will have to be determined by the evidence adduced at the trial.

[11] ID.—DELAY IN SUING—DENIAL OF RELIEF—RULE.—Where an express statute of limitations applies to a suit in equity, mere delay to commence a suit for a period less than that of the statute of limitations is never a reason for dismissing the proceeding, and a party cannot be refused a hearing if he shall bring his action within the prescribed period; but courts of equity will often refuse relief if there has been such delay and passive neglect on the part of complainants as, coupled with facts amounting to acquiescence in the acts complained of, will render the granting of the relief inequitable.

[12] ID.—DELAY—PREJUDICE—RULE.—In determining whether or not the delay in bringing a suit has been unreasonable regard will be had to any circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendants or of other persons have been prejudiced by the delay, and there must be present the element that the delay has been to the prejudice of the opposite party or of others.

[13] ACCOUNTING—PLEADING—TRUST FUNDS—CLAIM AGAINST ESTATE. In such a case the complaint states a cause of action against relatives of the purchaser of property at the tax sale to whom he gave and willed the proceeds of the sale of the property, although there is no allegation that the proceeds of the sale of the land can be traced to any specific property or fund held by the purchaser at the time of his death, or distributed in his estate, and although no claim was presented against his estate, but plaintiffs seek an accounting of these moneys, coupled with a prayer for equitable relief.

[14] ID.— CLAIM TO SPECIFIC PROPERTY — PRESENTING CLAIM UNNECESSARY.—One who claims as his own, adversely to an estate, specific property held and claimed by the estate, cannot be called a

---

11. Refusal of equitable relief because of laches, notes, 54 Am. Dec. 130; 2 Am. St. Rep. 795; 23 Am. St. Rep. 148.

Enforcement of stale claims in equity, note, Ann. Cas. 1914B, 314. See, also, 17 R. C. L. 738; 10 Cal. Jur. 523.

12. See 10 R. C. L. 402–406; 10 Cal. Jur. 526.

13. See 1 R. C. L. 224; 1 Cal. Jur. 177.

14. See 11 R. C. L. 191; 11 Cal. Jur. 651.

creditor of the estate within the meaning of the probate law, and is not required to present a claim.

[15] Trusts — Following Trust Property — Commingling. — When money or property of a trustor can be traced into a particular fund or deposit, where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust; although the identical pieces of coin cannot be ascertained, yet if there is so much belonging to the trust in a general heap of private and trust funds, the *cestui que trust* is entitled to take so much out.

[16] Id.—Gifts and Devises—Lack of Consideration.—In such a case the heirs of the purchaser at the tax sale who received from the latter either by gift or devise proceeds of the sale of the property, without consideration, are not protected against the claims of the true owners of the fund.

[17] Id.—Decree of Distribution—Collateral Attack.—A decree of distribution in the estate of a deceased person, under which plaintiffs acquired title to the property in question, from which no appeal was taken, is not open to collateral attack in such suit.

[18] Id. — Joinder — Nature of Suit — Bill Quia Timet.—In such a case the contention that there is a misjoinder of causes of action, in joining a cause of action against the heirs of the purchaser at the tax sale with one against others deriving title through him, and. an action to quiet title to personalty against said heirs, as donees, with an action to quiet title to personalty against said heirs, as devisees, and an action to quiet title to personalty against the defendant attorney and his wife, to whom he gave proceeds of the sale, cannot be maintained, as the action is one in the nature of a bill *quia timet* to preserve the interest of the plaintiffs in the *corpus* of the estate.

[19] Quieting Title—Remaindermen — Protection of Rights.— The right of a remainderman to come into equity by a bill *quia timet* for protection of his interest in realty or in personalty, where the property in the hands of a life tenant is in danger of loss, deprivation or injury, is firmly established.

---

15.  Right to pursue and recover trust funds, note, 32 **Am. St. Rep.** 125.  See, also, 26 **R. C. L.** 1348.

16.  See 11 **Cal. Jur.** 1121.

17.  Conclusiveness of decrees in probate, note, 48 **Am. Dec.** 744. See, also, 11 **R. C. L.** 183, 184; 12 **Cal. Jur.** 199.

18.  See 1 **Cal. Jur.** 361.

19.  Rights and remedies of remainderman, note, 14 **Am. St. Rep.** 628.  See, also, 23 **R. C. L.** 580.

[20] ACTIONS—RELIEF IN ONE ACTION.—It is the policy of the law to allow a party to obtain in one action all the relief to which he may be entitled on account of a single transaction, although such relief may be of a character that would require several suits under the strict rules relating to the forms of common-law actions prior to the adoption of the codes.

[21] EQUITY—JURISDICTION—RELIEF.—Where equity has acquired jurisdiction for one purpose, it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the cause of action presented.

[22] PLEADING—FRAUD—AMENDMENT.—The failure of the plaintiffs in such an action to separately state different causes of action arising out of the fraudulent transaction complained of was not ground for sustaining the demurrers without leave to amend.

[23] STATUTE OF LIMITATIONS—PROCEEDS OF SALE OF LAND—RIGHTS OF REMAINDERMEN.—For the same reasons that the statute of limitations has not run in such case against the paramount title of the remaindermen as to the realty, so it has not run and will not bar the action to determine conflicting priorities to proceeds of sale of the property. The life tenant may be barred, but not the remaindermen.

[24] JUDGMENTS—DESCRIPTION—EVIDENCE.—As applied to judgments, the rule is that the description in a judgment affecting real property should be certain and specific, and that an impossible, wrong, or uncertain description, or no description at all, renders the judgment erroneous and void; but the judgment may be aided by intendments and additional data drawn from the pleadings and other parts of the records, or even, in some cases, by extrinsic documentary evidence.

[25] ID.—UNCERTAINTY IN DESCRIPTIONS—EVIDENCE.—A judgment cannot be pronounced a nullity for uncertainty of description of property unless the court can see that nothing is described; and whether or not a description is defective must be tested by rules of evidence ordinarily applied to the subject.

[26] PLEADING—DEMURRERS—AMENDMENT—DISCRETION.—While, under some circumstances, there may be no abuse of discretion in refusing leave to amend, there remains always the open question whether or not the demurrers were properly sustained; and when a pleading in substance meets the objections urged against it by the

20.  See 10 Cal. Jur. 496.

21.  Equity jurisdiction assumed for one purpose as retained for all, note, Ann. Cas. 1912A, 803. See, also, 10 R. C. L. 370; 10 Cal. Jur. 496.

22.  See 21 Cal. Jur. 119.

23.  See 15 R. C. L. 595; 14 Cal. Jur. 955.

demurrers, and states a cause of action, the demurrers ought to be overruled.

[27] ID.—APPEAL—WAIVER.—Where special objections to a complaint have not been argued nor briefed on appeal, the points may be deemed to be waived.

(1) 34 C. J., p. 360, sec. 573.   (2) 31 C. J., p. 1168, sec. 357. (3) 37 Cyc., p. 1348.   (4) 37 C. J., p. 811, sec. 153.   (5) 37 C. J., p. 742, sec. 58.   (6) 32 Cyc., p. 1344.   (7) 21 C. J., p. 974, sec. 122. (8) 32 Cyc., p. 1345.   (9) 37 C. J., p. 1201, sec. 703.   (10) 37 C. J., p. 1202, sec. 703.   (11) 21 C. J., p. 228, sec. 222, p. 251, sec. 251. (12) 21 C. J., p. 231, sec. 225.   (13) 39 Cyc., p. 530.   (14) 24 C. J., p. 335, sec. 956.   (15) 39 Cyc., p. 538.   (16) 39 Cyc., p. 567.   (17) 24 C. J., p. 532, sec. 1404.   (18) 1 C. J., pp. 1099, 1100, sec. 263; 32 Cyc., p. 1348.   (19) 21 C. J., p. 567, sec. 105.   (20) 1 C. J., p. 1082, sec. 239; 21 C. J., p. 260, sec. 253.   (21) 21 C. J., p. 137, sec. 118. (22) 31 Cyc., p. 352.   (23) 33 C. J., pp. 1209, 1210, sec. 147.   (24) 33 C. J., p. 1210, sec. 147.   (25) 31 Cyc., p. 346.   (26) 4 C. J., pp. 1068, 1069, sec. 3057.

APPEAL from a judgment of the Superior Court of Stanislaus County. K. S. Mahon, Judge Presiding. Reversed.

The facts are stated in the opinion of the court.

Grant & Zimdars, C. F. Humphrey, L. J. Maddux, Nathan B. McVay, Charles A. Shurtleff and Beverly Hodghead for Appellants.

W. J. Brown, A. J. Carlson, Herbert Chamberlain, Dennett & Zion, Griffin, Boone & Boone, W. H. Hatton, Hawkins & Hawkins, Redman & Alexander, S. P. Elias, T. B. Scott and J. M. Walthall for Respondents.

WASTE, J.—This is an action brought to establish the right of plaintiffs in certain land and to the proceeds of the sale thereof. Demurrers to the complaint were sustained, without leave to amend. Judgment for the defendants followed, and plaintiffs have appealed. While a number of objections were raised by the special demurrers, the real questions presented by the appeal are whether or not a cause of action was stated and whether or not the action was barred by the statute of limitations. Respondents seek, also, to invoke the doctrine of laches.

The plaintiffs and appellants are the six children of Sarah E. Newport, one of the defendants, and claim to be the owners in remainder subject to the life estate of their mother in a quarter-section of land in Stanislaus County. They bring this action to establish that ownership, and to remove a cloud from their title as such remaindermen arising out of a purported tax sale and an alleged fraudulent judgment made while appellants were minors. They claim that the judgment which they attack is void for two reasons: First, because it was procured through extrinsic fraud under the facts alleged in the complaint, and, second, because the decree, on its face, contains no adequate description of the property by which it can be identified or located. The quarter-section involved was originally acquired by Charles I. Carner. He died leaving a will by the terms of which the property was bequeathed to his daughter, Sarah E. Newport, for her life, and upon her death to her children who might survive her. Carner's will was admitted to probate, administration had, and the property was distributed to Mrs. Newport for life, with the remainder to such lawful issue as might survive her, the decree providing that until the remaindermen received their portion the land should not be encumbered by mortgage or lien of other encumbrance.

[1] Mrs. Newport, after being in possession for a number of years, attempted to raise money on the property by sale or mortgage, but found she could do neither because of the fact that the fee was in the children, all of whom were then minors and very young. She applied to William H. Hatton, an attorney then practicing in Modesto, of whom she inquired by what means she could raise money on the property. Hatton replied that he would examine the records and advise her whether anything could be done by which money could be obtained by mortgage or sale of the property. Shortly thereafter he advised Mrs. Newport that he had found a way by which to raise money on the land, and that he would undertake to execute the plan in consideration of one-third of the amount of money which was so raised being paid to him. Mrs. Newport acquiesced, and an arrangement was made by which the children, these appellants, without any sale through guardianship proceedings, were to be deprived of their interest in the property. The plan, it is alleged, was as follows: The attorney reported that the land, which

was worth $10,000, was within the limits of, and had been assessed for $7,700 by, the Modesto Irrigation District. A tax of $109.39 had been levied upon it, which was due but not delinquent. Notwithstanding that it was the duty of Mrs. Newport, as the life tenant, to pay the tax, the plan proposed by Hatton was that she permit the tax to become delinquent and allow the property to be sold at a delinquent tax sale. Hatton procured Gabriel D. Plato, a client of his, to purchase the property at the sale for the amount of the assessment with costs added, amounting to $117.30, which was a little more than one per cent of its actual value. In due time a deed was issued by the collector of the irrigation district to Plato, describing the property as in the assessment set forth. This deed, it is alleged, did not contain the recitals or statements required by law.

This plan was devised in order to give the purchaser at the tax sale an apparent title to the property so that suit might be brought in his name against Mrs. Newport and the minor children to have it declared that Plato was the owner of the land. It was agreed that Hatton should prepare a complaint with Plato as plaintiff, to quiet title against Mrs. Newport, the owner of the life estate, and her husband, and against the minor children, who were then aged from three to eleven years. Hatton was himself to appear for the minors through a guardian *ad litem* to be appointed, and was to procure a judgment against them and in favor of Plato. Such complaint was drawn and filed on the fourth day of August, 1902. Summons was served upon the minor children by Hatton, who then procured the appointment of Charles Newport, father of the minors, as their guardian *ad litem*. Hatton filed answers on behalf of the adult defendants, and on behalf of the children by and through their guardian *ad litem*, and the matter came on for hearing. An amendment to the complaint filed on behalf of Plato was permitted to be made by inserting the word "fractional" in the description of the property, so that it was alleged to be a fractional, instead of a full, quarter-section, as first alleged. The various arrangements to procure judgment in the case upon the evidence of the tax deed were not disclosed to the court. It was kept in ignorance of the fact that Hatton had entered into an arrangement with the life tenant by which he was to appear for the minors, who

were his nominal clients but actually adversaries, and to procure a judgment in favor of Plato, who was his nominal adversary but actually his client. Upon the hearing the tax deed was introduced in evidence, and judgment followed for the plaintiff Plato, declaring that he was the owner of the land described in the complaint, as amended. Neither Hatton nor Plato ever paid any money to Mrs. Newport for the property, and neither she nor the children have received anything whatsoever for and on account of their interest in the lands. After obtaining the judgment Plato and Hatton sold the land and received large sums of money therefor. But of the money thus received by him through Plato, Hatton gave many thousands of dollars to his wife, the defendant Ora D. Hatton. Plato died on or about the seventh day of July, 1915, and it is alleged on information and belief that at and before his death he made large gifts and voluntary transfers of many thousands of dollars of the money received by him from the sales of the property to his nephew, S. P. Elias, and to his nieces, Leah Harris, Berta Elias, Clara Elias, Ernestine Bernheim, and Theresa Bernheim, all of whom are defendants in this action. Upon administration of Plato's estate, the remainder of the money received by him from sales of the property, and which had not theretofore been voluntarily transferred by him to Hatton, or to his nieces and nephew, was distributed to the latter.

After the sale for taxes was made and the judgment quieting title procured, Hatton admonished Mrs. Newport that she must never reveal or tell anybody the reason or the purpose of the plan devised by him, or of the steps taken in the matter, for the reason, he stated, that if she did, the accomplishment of the end sought might fail, and the scheme could not be carried out. Mrs. Newport was forbidden by him to ever permit herself to speak of the property as her own, as she might thereby disclose the scheme and so frustrate the plan. Mrs. Newport obeyed the instructions of Hatton and never spoke of or divulged the transaction, whereby the property was sold for taxes and Plato's apparent title quieted, until some months before the commencement of this action, complaint in which was filed August 13, 1921. Then, at a family council of herself, her husband, and these plaintiffs and their attorneys, she nar-

rated the full facts and circumstances alleged in the complaint, the substance of which we have set out.

It is alleged that some of the defendants, other than the Hattons, Sarah E. and Christian J. Newport, and the nieces and nephew of Plato, based their claim of right and interest in the property on transfers and conveyances from Plato, that others claimed through different sources, and that the claims of all of the defendants are without merit and create a cloud upon the title of plaintiffs. It is further alleged that all of these defendants claiming an interest in the property had notice through the public records of the county of Stanislaus and otherwise of certain specified facts, showing the invalidity of the proceedings relative to the tax sale and the judgment, and had knowledge that the tax deed was void, and the judgment in the suit brought by Plato to quiet title was collusive and designed to fraudulently divest plaintiffs of their rights in the property. The prayer of the complaint is that it be adjudged that plaintiffs—all. of whom were of age when the action was commenced—are the owners of the estate in fee, subject only to the life estate of Sarah E. Newport, and that the tax sale, and the deed issued in pursuance thereof, and the judgment obtained by Plato in the action to quiet title be adjudged to be null and void; that it be determined that the defendants have no right whatever in and to the remainder in fee of the property belonging to plaintiffs, and that a full accounting be had of all moneys received by Hatton or Plato through sales or conveyances made by them of the lands, and for equitable relief.

We conclude without hesitation that the judgment obtained by Plato against these appellants, the allegations of the complaint being admittedly true for the purposes of demurrer, was obtained through fraud and collusion. [2] An infant is ordinarily bound by acts done in good faith by his guardian *ad litem* or counsel in the course of a suit to the same extent as a person of full age. Even if the court pronounce a decree against an infant by consent, and without inquiry whether it will be for his benefit, he is ordinarily as much bound as if there had been an examination and a finding that it was for his benefit. Such case falls within the general rule that a decree made by consent of counsel, without fraud or collusion, cannot be set aside by rehear-

ing, appeal, or review. *(Thompson* v. *Maxwell Land Grant etc. Co.,* 168 U. S. 451 [42 L. Ed. 539, 18 Sup. Ct. Rep. 121, see, also Rose's U. S. Notes].) The difficulty in the situation presented here is that the consent of the guardian *ad litem* was in effect a fraudulent consent, and that the proceedings were not adversary. The same attorney, that is, the attorney representing the mother, the life tenant, controlled both sides of the litigation. [3] The transaction by which Mrs. Newport, at the instance of Hatton, permitted the property to be purchased by Plato, amounted simply to a payment or redemption, which it was the duty of Mrs. Newport, the life tenant, to make. (21 Cor. Jur., p. 942, par. 74.) The true facts were not presented to the court. By this fraudulent concealment and control of both sides of the litigation, the rights of the minors were never presented for adjudication, and the decree as to them was fraudulent. *(Pico* v. *Cohn,* 91 Cal. 129, 135 [25 Am. St. Rep. 159, 13 L. R. A. 336, 25 Pac. 970, 27 Pac. 537] ; *Rountree* v. *Montague,* 30 Cal. App. 170, 181 [157 Pac. 623] ; *Cotterell* v. *Koon,* 151 Ind. 182 [51 N. E. 235].)

[4] At the oral argument it seemed to be conceded by counsel for both sides that this case, in so far as it relates to an interest in land, is controlled by the limitations of section 318 of the Code of Civil Procedure, which provides that ''no action for the recovery of real property, or for the recovery of the possession thereof, can be maintained, unless it appear that the plaintiff, his ancestor, predecessor, or grantor, was seized or possessed of the property in question within five years before the commencement of the action.'' That cannot be, for neither seisin nor possession is involved, but we deem it unnecessary to determine what is the proper section to apply, for no statute of limitations has yet run. In determining that question, it becomes necessary to ascertain the nature of the action, which may be done through a scrutiny of the allegations of the complaint, and, in a measure, by the character of the relief sought and necessarily incident to the purpose and final determination of the action. *(Bradley Bros.* v. *Bradley,* 20 Cal. App. 1, 5 [127 Pac. 1044].) [5] From such an examination, it clearly appears that the plaintiffs' action is founded upon a claim that the judgment transferring the legal title from them was secured by fraud and collusion, for which reason they

seek to have it set aside and declared void. While fraud
and collusion in its procurement are alleged, the right of the
plaintiffs to relief is not made to depend altogether upon
the question whether or not the judgment was so tainted;
but the gravamen of the action is that the judgment is a
cloud upon their title, for which reason its cancellation is
asked. Hence the fraud and collusion alleged are not con-
trolling when we come to assign the action to its proper
class under the statute of limitations. If they exist, they
are merely features in the case, and do not serve as a test
of the true nature of the cause of action within the meaning
of the statute. It is, therefore, evident that the case does
not fall within the bar of three years erected by subdivision
4 of section 338 of the Code of Civil Procedure relating to
actions for relief on the ground of fraud. (*Scholle* v. *Fin-
nell,* 166 Cal. 546, 551 [137 Pac. 241].)

[6] The appellants are not in court on the theory of a
trust which leaves all the steps in the transaction undis-
turbed, but for the reason that the entire transaction should
be annulled. Under the facts pleaded, this action is one to
establish a paramount interest in property, and to remove
a cloud from the title. Possession is not involved, and can-
not be, for, until the falling in of the life estate of the
mother, the plaintiffs are not entitled to possession. Mrs.
Newport, as life tenant, could not, by her dealings with
the life estate, make her own or a grantee's possession ad-
verse to that of the remaindermen so as to start the statute
of limitations against them during the life estate. (Civ.
Code, sec. 741; *Akley* v. *Bassett,* 189 Cal. 625, 643 [209 Pac.
576].) "It would be strange, indeed, if during the life of
the particular tenant a remainderman could be compelled
to lose his estate on account of another's possession which he
would be utterly helpless to interrupt." (*Pryor* v. *Winter,*
147 Cal. 554, 559 [109 Am. St. Rep. 162, 82 Pac. 202, 204].)
It was the duty of Mrs. Newport, as life tenant, to pay the
taxes upon the property. (Civ. Code, sec. 840.) Instead
of paying the tax, she arranged with her attorney that
someone selected by him should purchase the property at
the delinquent tax sale, and take title through the medium
of a sale to himself. By this arrangement, Plato, the pur-
chaser at such sale, merely became her agent for the payment
of the tax, and the tax deed to him, assuming it to be other-

wise valid, had no greater effect against the remaindermen
than a tax receipt. Neither the life tenant nor Plato could
in this manner acquire a title adverse to the plaintiffs. (21
Cor. Jur., p. 942, par. 74; *Jeffers* v. *Sydnam*, 129 Mich. 440
[89 N. W. 42]; *Mason* v. *Wingate*, 275 Ill. 117 [113 N. E.
975].) Theirs is an independent, paramount title (*Pryor*
v. *Winter, supra*), and, because of the fraud practiced, re-
mained unaffected by the judgment in the Plato suit.

Where a right of action is joint, knowledge which would
bar it as to one of the plaintiffs would bar it as to all.
(*Robertson* v. *Burrell*, 110 Cal. 568, 577 [42 Pac. 1086].)
At the time of the commencement of this action the oldest
child of Mrs. Newport had been of age for twelve years,
and the youngest for four years. The respondents contend
that the action is in fact a joint action, and was barred as
to all the plaintiffs five years after the oldest child became
of age, citing the language of this court in *Akley* v. *Bassett,
supra*. In disposing of the contention, we do not mean to
imply that this is a joint action. (See sec. 384, Code Civ.
Proc.) The Akley case was unlike this in that the remain-
derman waited for some seventeen years after the death of
the life tenant before beginning her action in partition.
During all that period she was entitled to possession as
owner of a part of the fee, but at no time during the period
did she assert her rights. In the case now before us the
life tenant was still alive, and the time for possession by
the remaindermen had not arrived when the action was com-
menced. [7] The statute of limitations in such action as
this does not begin to run against the parties in remainder
until after the death of the tenant for life who has aliened
the fee. Until that event takes place, the possession of the
purchaser is not and cannot be adverse to the remaindermen
or reversioners. (*Mann* v. *Mann*, 141 Cal. 326, 330 [74 Pac.
995]; *Pryor* v. *Winter, supra*.) [8] A claim of title, even
of record, unaccompanied by adverse holding, will not start
the statute. A party holding the paramount claim to a legal
title is not called upon to take action against a hostile claim
which is not of a nature to ripen into a valid adverse title.
An outstanding adverse claim, which amounts only to a cloud
upon a title, and which is not of such a nature as to give the
adverse claimant a prescriptive title, is a continuing cause

of action, and is not barred by lapse of time until the hostile claim is asserted in some manner to jeopardize a superior title. (*Secret Valley Land Co.* v. *Perry,* 187 Cal. 420, 426 [202 Pac. 449]; 16 Cal. Jur., p. 442, par. 50.) It follows, therefore, that the plea of the statute of limitations interposed by the respondents must be denied.

The respondents who are claimants of portions of the real property through Hatton and Plato, or their successors, contend that on its face the complaint shows that the plaintiffs have been guilty of laches, and that the allegations relating to the disclosure of the fraud practiced upon plaintiffs are insufficient to explain why an earlier discovery was not made. It is also the contention of these respondents that the complaint does not show that the appellants did not have actual knowledge of the fraud from some source other than from the lips of the life tenant. Respondents have advanced a formidable array of authorities which hold that whether or not there has been a discovery of the facts constituting a fraud, within the meaning of the statute of limitations, is a question of law to be determined from the facts pleaded, and it is not sufficient to aver a mere conclusion of discovery of the fraud, nor to aver ignorance of the facts at the time of their occurrence and lack of information thereof until within a period within which the statute of limitations might run against the bringing of the action. The general rule undoubtedly is that a plaintiff who is seeking redress upon the ground of fraud, and who is endeavoring to avoid the bar of the statute of limitations, must show that the acts of fraud were committed under such circumstances that they were not presumptively within his knowledge. He must also show the times and the circumstances under which they were brought to his knowledge, so that the court may determine whether or not the discovery was within the time alleged. (*Lady Washington etc. Co.* v. *Wood,* 113 Cal. 482 [45 Pac. 809]; *Wood* v. *Carpenter,* 101 U. S. 135 [25 L. Ed. 807, see, also, Rose's U. S. Notes].) These cases, and many others cited by respondents, relate to actions for relief on the ground of fraud, which must be brought within three years, and in which cases the cause of action is not deemed to have accrued until the discovery by the aggrieved party of the facts constituting the fraud. (Code Civ. Proc., sec. 338,

subd. 4.)    **[9]**    The rule laid down by the authorities is that
where such action is brought after the expiration of the
statutory period of three years the complaint must show the
facts from which the court may determine whether or not the
fraud was in truth discovered only within three years before
the commencement of the action.  (*Victor Oil Co.* v. *Drum,*
184 Cal. 226, 241 [193 Pac. 243].)    But, as we have already
pointed out, this is not an action for relief upon the ground
of fraud.    **[10]**    Although one of the main grounds of the
action is fraud, whereby the defendants have obtained the
legal title to the land in controversy, and the chief con-
tention between the parties may center about the fraud
alleged, the plaintiffs have pleaded facts which show, as
matter of law, that they are the owners of the remainder
interest in the land, and part of the relief sought is that
their title be quieted.    Therefore, as we have also pointed
out, section 338 does not apply because that section has no
application to this class of actions.    (*Scholle* v. *Finnell,*
*supra,* at p. 551.)    The running of the statute in this case
is not dependent on discovery, but on the termination of the
life estate of Sarah E. Newport.    No limitation is here in-
volved which dates from the time when the fraud occurred,
or from the date of the discovery of the facts constituting
the fraud.    (*Goodnow* v. *Parker,* 112 Cal. 437, 443 [44 Pac.
738].)    The allegations relating to the discovery of the fraud
do not, therefore, relate to an essential element of the cause
of action of the plaintiffs in this case.

Whether or not the plaintiffs have been guilty of laches
will have to be determined by the evidence adduced at the
trial.    Each case where laches is depended upon must rest
upon its own facts.    It is difficult to state as a general
proposition what period will bar relief from consequences
of fraud, and there is wide scope for the exercise of the dis-
cretion of the chancellor.    (*Dufour* v. *Weissberger,* 172 Cal.
223, 225 [155 Pac. 984] ; 10 Cal. Jur., p. 526, par 64.)    **[11]**
Where an express statute of limitations applies to a suit in
equity, mere delay to commence a suit for a period less than
that of the statute of limitations is never a reason for dis-
missing the proceeding, and a party cannot be refused a
hearing if he shall bring his action within the prescribed
period.    (*Lux* v. *Haggin,* 69 Cal. 255, 267 [4 Pac. 919, 10

Pac. 674].) It is as well settled, however, that courts of equity will often refuse relief if there has been such delay and passive neglect on the part of the complainants as, coupled with facts amounting to acquiescence in the acts complained of, will render the granting of the relief inequitable. (*Stevenson* v. *Boyd,* 153 Cal. 630, 636 [19 L. R. A. (N. S.) 525, 96 Pac. 284].) **[12]** In determining whether or not the delay has been unreasonable, regard will be had to any circumstances which justify the delay, to the nature of the case and the relief demanded, and to the question whether the rights of the defendants, or of other persons, have been prejudiced by the delay. (*Cahill* v. *Superior Court,* 145 Cal. 42, 46 [78 Pac. 467].) There must be present the element that the delay has been to the prejudice of the opposite party or of others. (*Victor Oil Co.* v. *Drum, supra,* at p. 242.) It nowhere appears on the face of the complaint that the defendants will suffer any prejudice by the delay if the plaintiffs prevail in this action. The element of the discovery of the fraud being eliminated in the present case, there is, therefore, nothing of any substance, aside from the long delay in bringing the action, on which to predicate the defense of laches. Such delay, however, with other circumstances not now appearing on the face of the complaint, including injury to the defendants if plaintiffs should prevail, may operate to justify a finding that the plaintiffs have been guilty of an unreasonable delay. If such a situation be developed through a plea of acquiescence, amounting to estoppel, or shall appear from the evidence (*Lux* v. *Haggin, supra; Akley* v. *Bassett, supra*), and if it be made to appear to the satisfaction of the trial court, the plaintiffs ought not to recover in this action. After the lapse of so much time, and after the death of some of the original parties, equity will scrutinize with great particularity such complaints as this (*Robertson* v. *Burrell, supra,* at p. 577) ; but these plaintiffs have alleged facts which show as a matter of law they are entitled to maintain the action, and nothing appears on the face of the complaint from which it may be said that it yet seems that it would be inequitable for them to do so.

The complaint states a cause of action against those respondents, the property owners, who took title to any part

of the property with knowledge of the fraud. If any there be, they acquired the property subject to the rights of the plaintiffs. If such an action were brought against Hatton and Plato under the circumstances shown in the complaint, there seems little doubt but that the judgment obtained for Plato would be set aside, and the cloud removed from plaintiffs' title to an estate in the remainder of the property. Appellants concede that any person acquiring title to any part of the property in good faith, and without knowledge of the fraud, is fully protected, notwithstanding the interests of the plaintiffs. Their rights cannot prevail over those of innocent purchasers in good faith and for value. That much is not disputed. The complaint alleges that all the defendants had notice of the acts of fraud set forth, which precludes the idea of innocent purchasers at this time. If there are any, the facts constituting them such must appear by answer and find support in the evidence material to the issues thus raised.

Thus far we have been considering the nature of the action stated in its relation to the real property. While the primary purpose of the action is to have it declared that the plaintiffs are the owners of a remainder interest in the land, incidentally thereto they are seeking to ascertain what has become of the money derived from the sale of the land by Plato and Hatton. As well expressed by appellants, the accounting is for the purpose of ascertaining what property has taken the place of the real estate which has been transferred, and to have plaintiffs' rights, as owners of the estate in remainder in this property, declared. They are asking no relief, as against the defendants Hatton and the nephew and nieces of Plato, except the right to a judgment declaring that the money so received by this group of defendants has taken the place of the real estate, and to have it declared that plaintiffs are entitled to the possession of this personal property, the money, upon the death of the life tenant.

[13] It is contended by the nephew and nieces of Gabriel D. Plato, who are respondents here, that no cause of action is stated against them. The allegations of the complaint, in substance, are that after obtaining the judgment in the quiet title suit, Plato sold the land, for which Hatton and he received large sums of money. There is the allegation that Plato, at and before his death, made large gifts and

voluntary transfers, amounting to many thousands of dollars of the moneys received and retained by him from the sales of the property, to his nephew and nieces, and that on distribution of Plato's estate there was distributed ''to said Plato's nephew and nieces all the remainder of the selling price of said lands so received by said Plato and which had not been so voluntarily transferred by said Plato to his said nieces and nephew prior to his death, or paid over by him to said Hatton.''

Plaintiffs at this time seek an accounting of these moneys, coupled with a prayer for equitable relief. There is no allegation that the proceeds of the sale of the land can be traced to any specific property or fund held by Plato at the time of his death, or distributed in the matter of his estate. Instead, there is the allegation that the plaintiffs do not know, and therefore cannot allege, the exact amounts of money given by Plato to his nephew and nieces during his lifetime, or received by them on distribution of his estate. The Plato heirs contend that it being impossible for the plaintiffs to ''earmark'' the proceeds of the sales of the realty their only remedy was to proceed against his estate in an action for debt, a claim for which must have been presented against his administrator within the time fixed by law. (*Lathrop* v. *Bampton*, 31 Cal. 17, 23 [89 Am. Dec. 141]; *Orcutt* v. *Gould*, 117 Cal. 315 [49 Pac. 188].) There being no allegation that any claim was so presented, respondents assert no cause of action has been pleaded. [14] It is well settled, however, that one who claims as his own, adversely to an estate, specific property held and claimed by an estate, cannot be called a creditor of the estate within the meaning of the probate law, and is not required to present a claim. (*Estate of Dutard*, 147 Cal. 253, 256 [81 Pac. 519].) Therefore, unless it can be said that the complaint here shows on its face that the identical trust property, or its product in a new form, cannot be traced by the plaintiffs, the contention of the respondents must fail. [15] When the money or property of the trustor can be traced into a particular fund or deposit, where it remains, though mingled with other money, the beneficiary may seek to follow the specific personal property and enforce the trust. Though the identical pieces of coin cannot be ascertained, yet if there is so much belonging to the trust in a general

heap of private and trust funds, the *cestui que trust* is entitled to take so much out.  (*Elizalde* v. *Elizalde,* 137 Cal. 634, 641 [66 Pac. 369, 70 Pac. 861]; *Estate of Arms,* 186 Cal. 554, 560 [199 Pac. 1053].)

The allegations here amount to an averment that the actual money received by Plato from the sales of the real property was turned over to his nephew and nieces.  To allege more would be stating the evidence.  It only remains for the court to " 'disentangle the account, and separate the trust from the private moneys,' " if any there were. (*Elizalde* v. *Elizalde, supra.*)

[16] The Plato heirs paid no consideration for the money received from Plato.  They were volunteers, considered either as donees, or distributees from the estate, and as such are not protected against the claims of the true owners of the fund. As to them, if the allegations of the complaint be true, the plaintiffs are not estopped from following their property. We see no material distinction in the relations of the Plato heirs and of the defendants Hatton to the case.  The allegation of the complaint is that throughout all the proceedings relating to the property and the sales Plato acted in pursuance to the direction of Hatton, and in aid and consummation of the scheme devised by Hatton.  He had no right or title to the land except as he derived it through the tax sale and the subsequent judgment.  As to such defendants, therefore, a cause of action is stated.  As against them, the plaintiffs are not asking for the possession of the money. It was conceded by them at the last argument that as remaindermen they are not entitled to possession of the personal property at this time any more than of the real property.  They are seeking, however, a determination that they are the owners of an interest in the fund which they will have a right to claim at the termination of the life estate.  In addition to the prayer for an accounting, plaintiffs ask for equitable relief.  The form of such equitable relief in relation to the money, if plaintiffs succeed in establishing their interest, must be determined by the chancellor.

[17] It was contended as to some one or other of the different groups of respondents that the appellants had no foundation for their claim to an interest in the lands in question, for the reason that the decree of distribution in the matter of the estate of their grandfather, Charles I.

Carner, is void because the estate thereby created in appellants violates the statute against perpetuities. Assuming that this might be true, no appeal was ever taken from the decree, and it is not now open to collateral attack. (*Crew* v. *Pratt,* 119 Cal. 131 [51 Pac. 44]; *Crew* v. *Pratt,* 119 Cal. 139, 151 [51 Pac. 38].)

[18] Another objection, raised by the demurrer of the respondents known as the Plato heirs, is that as to them there has been a misjoinder of causes of action. They assert that five separate and distinct causes of action have been improperly united in the complaint, and have not been separately stated. These are, they say: (1) An action to quiet title to, or recover real property against, the defendants claiming under Plato; (2) an action to quiet title to real property against parties other than those deriving title through Plato, and based on the alleged insufficiency of the description in the tax redemption proceedings, and carried into the judgment in the action by Plato to quiet title; (3) an action to quiet title to personalty against the Plato heirs as donees of Plato; (4) an action to quiet title to personalty against the Plato heirs as devisees of Plato; (5) an action against the defendants Hatton to quiet title to personalty. These various sets of defendants, respondents argue, have no united interest in the subject matter of the litigation. Respondents also say: "If it be conceded the first cause of action was to recover realty or to quiet title, and the second cause of action was against us to enforce a trust, there, again, we find under the settled law of this state that such cannot be done," citing *Reynolds* v. *Lincoln,* 71 Cal. 183, 188 [9 Pac. 176, 12 Pac. 449].

The objection that several causes of action have been improperly united is not well taken. Appellants concede that they are not now entitled to possession of either the real property or any money derived from the sales. They also concede that they cannot eventually recover both the real property and the money. Their immediate concern is that their remainder interest in the *corpus* of the estate be preserved. The present action is one in the nature of a bill *quia timet;* that is, it is one in the nature of a writ of prevention, and is entertained as a measure of precautionary justice and to forestall wrongs or anticipated mischief. (*Bailey* v. *Briggs,* 56 N. Y. 407, 415; 21 Cor. Jur., p. 130,

par. 106; *Archbishop* v. *Shipman*, 69 Cal. 586, 589 [11 Pac.
343]; see, also, *Greiner* v. *Greiner*, 58 Cal. 115, 121.)
[19] The right of a remainderman to come into equity by
a bill *quia timet* for a protection of his interest in realty or
in personalty, where the property in the hands of a life
tenant is in danger of loss, deprivation, or injury, is firmly
established. (21 Cor. Jur., p. 967, par. 105; *Underwood* v.
*Underwood*, 162 Ala. 553, 136 Am. St. Rep. 61, 64 [50 South.
305]; *Terry* v. *Allen*, 60 Conn. 530, 541 [23 Atl. 150];
*Collins* v. *Barksdale*, 23 Ga. 602; *Evans* v. *Pettus*, 112 Ark.
572, 581 [166 S. W. 955].)

Appellants' complaint is similar to a bill *quia timet*. (See
notes to *Whitehouse* v. *Jones*, 12 L. R. A. (N. S.) 49, 53, and
72.) Section 738 of the Code of Civil Procedure provides
that "an action may be brought by any person against
another who claims an estate or interest in real or personal
property, adverse to him, for the purpose of determining
such adverse claim. . . . " Any appropriate remedies re-
quired upon equitable considerations and justified by the
pleadings and proof may be had in such a case. (*De Leonis*
v. *Hammel*, 1 Cal. App. 390, 394 [82 Pac. 349].) The
action is one in equity, and legal and equitable remedies
may be sought in the same case where they relate to the
same subject matter. [20] It is the policy of the law to
allow a party to obtain in one action all the relief to which
he may be entitled on account of a single transaction, al-
though such relief may be of a character that would require
several suits under the strict rules relating to the forms of
common-law actions prior to the adoption of the codes.
(*Murphy* v. *Crowley*, 140 Cal. 141, 145 [73 Pac. 820]; see,
also, *Wilson* v. *Castro*, 31 Cal. 420, 431; *Bonifacio* v. *Stuart*,
52 Cal. App. 487, 489 [199 Pac. 69].) In this action the
right to the accounting and any rights appellants may be
found to have in the proceeds of the sales depend upon the
determination of the main issue. If appellants fail there,
their whole cause fails for want of a foundation. [21] The
case seems to present, therefore, a proper situation for the
application of the rule that where equity has acquired juris-
diction for one purpose it will retain that jurisdiction to the
final adjustment of all differences between the parties arising
from the cause of action presented. It is, indeed, the duty
of a court of equity, when all the parties to the controversy

are before it, to adjust the rights of all and leave nothing open for further litigation. (*Swan* v. *Talbot*, 152 Cal. 142, 145 [17 L. R. A. (N. S.) 1066, 94 Pac. 238]; *Barber* v. *Superior Court*, 43 Cal. App. 221, 224 [184 Pac. 952].) We conclude, therefore, that the demurrers upon the ground that there was a misjoinder of causes of action in this case were improperly sustained.

[22] For like reasons, we are of opinion that the failure of the plaintiffs to separately state differing causes of action arising out of the fraudulent transaction here complained of was not ground for sustaining the demurrers without leave to amend.

The statute of limitations has been invoked by the respondents interested in the proceeds of the sales made by Plato. They cite and rely on *Brazil* v. *Silva*, 181 Cal. 490 [185 Pac. 174, 178], where it was said (page 499), referring to an action in which both realty and personalty were involved: "While the action could be brought within the period permitted for actions on the ground of fraud, it could also be brought as to the personalty involved within the period permitted for actions to recover personalty, and as to the realty involved within the period permitted for actions to recover realty." As the action was brought within both the latter periods, the court held that no statute of limitations had run against it. All that *Brazil* v. *Silva* decided on the point we are now considering was that under any of the sections of the statute of limitations which might be applied to it, the action was brought within time. The language we have quoted was used by Mr. Justice Olney in explanation of the conclusion he was about to announce. But neither the language of the court nor the decision on the facts support the contention of the respondents that plaintiffs' cause of action against the holders of the sales money is barred by a three-year limitation under subdivision 4 of section 338 of the Code of Civil Procedure. [23] For the same reasons that the statute of limitations has not run against the paramount title of the remaindermen as to the realty, and will not begin to run until the termination of the life estate, so it has not run, and will not bar the action to determine conflicting priorities to the money. The life tenant in this case may be barred, but the remaindermen are not.

Appellants have argued here that, if for no other reason it can be said that they have stated a cause of action against the respondents, they are entitled to maintain the action for the reason that the tax deed issued to Plato was void for lack of an adequate description of the property sold at the delinquent tax sale, and that the subsequent judgment procured on the faith of the deed, and which follows the description in the tax collector's deed, is void for the same reason. It is their contention that the property cannot be identified. The land involved is located in the northwest quarter of section 29. It is alleged in the complaint, and the court can take judicial notice of the fact (*Quinn* v. *Windmiller*, 67 Cal. 461, 462 [8 Pac. 14]), that such quarter-section is what is known as a full quarter-section and contains 160 acres. The assessment which resulted in the tax deed described the land in two separate parcels: The north half, consisting of eighty acres; and the "fractional south ½," consisting of seventy-five acres. There is no description from which it may be determined which seventy-five acres of the south half of the quarter-section was assessed and nothing appeared in the assessment itself by which one might identify or locate the land. The deed from the tax collector to Plato followed the description in the assessment. When the collusive and fraudulent suit was brought by Plato, the complaint described the property as the northwest one-quarter. During the trial the complaint was amended by consent by inserting the word "fractional" in the description, so that the land would no longer be described as a full quarter-section but as a fractional quarter. In the findings and decree the lands are described as in the complaint as amended. Appellants contend that the judgment is, therefore, void on its face, for, without further description as to what part, or how much, of the northwest quarter of section 29 was sought to be affected by or included in the action to quiet title, the land cannot be identified or located.

[24] The gist of the argument of appellants is that if there is a conveyance of part of a tract such part must be so distinguished that it may definitely be ascertained and identified, and, when a deed calls for but a part of a large tract of land, and there is no identification of the part intended to be conveyed by measurement or quantity, and nothing further in the deed by which the part may be

identified, there is an uncertainty vitiating the deed. (18 Cor. Jur., p. 182, par. 64.) Applied to judgments, the rule is that the description in a judgment affecting real property should be certain and specific, and that an impossible, wrong, or uncertain description, or no description at all, renders the judgment erroneous and void. (33 Cor. Jur., p. 1209, par. 147.) The same work is authority for the declaration that the judgment may be aided by intendments and additional data drawn from the pleadings and other parts of the records, or even, in some cases, by extrinsic documentary evidence. [25] We do not see how a judgment can be pronounced a nullity for uncertainty of description unless the court can see that nothing is described. Those claiming under it must rely on the description, it is true, but whether or not the description is defective must be tested by rules of evidence ordinarily applied to the subject. (*De Sepulveda* v. *Baugh*, 74 Cal. 468, 474 [5 Am. St. Rep. 455, 16 Pac. 223] ; *Smith* v. *Biscailuz*, 83 Cal. 344, 360 [21 Pac. 15, 23 Pac. 314] ; 14 Cal. Jur., p. 957; 15 R. C. L., p. 595.) The plaintiffs in this case have not made it clear that the land described in the judgment quieting title is so uncertain that the property cannot be identified and established with sufficient certainty, by the application of the ordinary rules of evidence, to define the rights of the parties.

The parties here on appeal are numerous. Many briefs and petitions have been filed, and the case has been several times argued. The different questions involved have been discussed by the various parties, sometimes from the same, and sometimes from different points of view. If it should seem to appear, from any language used in the opinion, that we have discussed certain points in the light of the contentions made by one or the other of the parties, let it be known that we have attempted to consider the matter as nearly as possible, and as far as we have been able to gather from the briefs and arguments, in the light of the contentions of all the parties. What we have said, we think, disposes of the meritorious contentions presented by the appeal.

Certain of the respondents urge the point that appellants are in no position to complain that the trial court abused its discretion in sustaining the demurrers without leave to amend, for the reason that it appears from the record that they were content to stand on the allegations of the com-

plaint, making no application for leave to amend, or indicating in any manner how the complaint could be amended to meet the objections raised by the demurrers. [26] While, under some circumstances, there may be no abuse of discretion in refusing leave to amend (*Marsh* v. *Lott,* 156 Cal. 643, 649 [105 Pac. 968]), there remains always the open question whether or not the demurrers were properly sustained. When a pleading in substance meets the objections urged against it by the demurrers, and states a cause of action, the demurrers ought to be overruled. (*Stewart* v. *Douglass,* 148 Cal. 511, 514–516 [83 Pac. 699].) The demurrers in this case raise many special objections, in addition to the general grounds, the bar of the statute of limitations and the defense of laches which have been the subjects of the briefs and arguments. [27] The special objections have not been argued nor briefed. We may, therefore, deem the points waived. The contentions made on the appeal have raised the vital questions necessary to be decided if the plaintiffs are to proceed further.

The judgment is reversed and the cause is remanded to the trial court, with directions to enter an order overruling the demurrers of the various defendants.

Lawlor, J., Lennon, J., Richards, J., Shenk, J., Seawell, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.