[Civ. No. 1000. Fourth Appellate District.—January 4, 1933.]

E. IVERSON et al., Respondents, v. MINNIE L. GOOD-
BUB et al., Defendants; J. H. ROBERTS, as Ad-
ministrator, etc., Appellant.

Wheeler & Wackerbarth for Appellant.

Howard F. Shepherd for Respondents.

MARKS, J.—Louise J. Roberts, originally one of the
defendants in this action, died pending this appeal and
J. H. Roberts, as the administrator of her estate, has been
substituted in her place and stead.

This is an action for specific performance of a written
agreement whereby Minnie L. Goodbub and J. H. Roberts
agreed to sell and E. Iverson and Inga Iverson agreed to
buy an apartment house and its furnishings for $25,000.
The contract was made on or about September 20, 1928,
and was in the form of escrow instructions signed by Mr.

and Mrs. Iverson and Minnie L. Goodbub and J. H. Roberts. The purchasers deposited the full amount of the purchase price with the escrow agent and Minnie L. Goodbub deposited a deed conveying title to the real estate to them. The escrow was extended for a number of months to enable the sellers to clear a cloud on the title. On March 20, 1929, Minnie L. Goodbub conveyed the real property to Louise J. Roberts and these two with J. H. Roberts gave written notice of the termination of the escrow and demanded the return of the instruments deposited by them. Thereupon this action was instituted to compel the specific performance of the contract of sale.

The evidence discloses that J. H. Roberts and Louise J. Roberts were husband and wife and that Mrs. Roberts and Minnie L. Goodbub were sisters. The three lived at the apartment house in question, which was owned by Mrs. Roberts. She owed her sister about $1300 and deeded the property to her some time prior to September 20, 1928, Minnie L. Goodbub holding the record title until March 20, 1929.

The property was listed for sale with F. H. Steeves. Mrs. Roberts did not sign the listing. The realtor procured Mr. and Mrs. Iverson as purchasers of the property. They went to the apartment house at least twice to look it over and saw Mrs. Roberts there. She was present at a conversation between the realtor, her sister and her husband when the amount of the commissions to be paid for the sale of the property to Mr. and Mrs. Iverson was discussed. She was present in a small office of the escrow holder when the deed was prepared and signed by Minnie L. Goodbub and the sale discussed by her sister, her husband and the escrow officer. She testified she did not know of the proposed sale.

The trial court found all necessary facts in favor of Mr. and Mrs. Iverson; that Minnie L. Goodbub was the agent of Mrs. Roberts and that Mrs. Roberts was estopped from denying the agency; that the Iversons had no notice of any claim to or interest in the property on the part of Mrs. Roberts. Judgment was rendered ordering the specific performance of the contract, the cancellation of the deed from Minnie L. Goodbub to Mrs. Roberts, ordering the escrow-holder to deliver the deed from Minnie L. Goodbub to the

Iversons, quieting title to the Iversons, and ordering that they have possession of the property.

Appellant presents many specifications of error. The great majority of them attack findings as not supported by the evidence. These contentions are principally based on Mrs. Roberts' testimony that she had no knowledge of the sale to respondents. From what has been said it appears that the trial court was amply justified in finding that she did know of this transaction.

Appellant complains that the judgment went beyond the issues formed by the pleadings in awarding respondents possession of the property. The action was equitable in its nature. It is the policy of equity that it once having acquired jurisdiction it will settle all the controversies between the parties that it can reasonably do, so as to avoid unnecessary litigation. As was said in *Newport* v. *Hatton,* 195 Cal. 132, at p. 153 [231 Pac. 987, 995]: "In this action the right to the accounting and any rights appellants may be found to have in the proceeds of the sales depend upon the determination of the main issue. If appellants fail there, their whole cause fails for want of a foundation. The case seems to present, therefore, a proper situation for the application of the rule that where equity has acquired jurisdiction for one purpose it will retain that jurisdiction to the final adjustment of all differences between the parties arising from the cause of action presented. It is, indeed, the duty of a court of equity, when all parties to the controversy are before it, to adjust the rights of all and leave nothing open for further litigation. (*Swan* v. *Talbot,* 152 Cal. 142, 145 [94 Pac. 238, 17 L. R. A. (N. S.) 1066]; *Barber* v. *Superior Court,* 43 Cal. App. 221, 224 [184 Pac. 952].)"

After the notice of appeal from the judgment had been filed appellant sought to have the trial court fix the amount of a stay bond. Appeal was taken from an order fixing the amount of the bond at $5,000. The decision of the question presented by the appeal from this order has become unimportant because of the decision of the questions presented on the appeal from the judgment.

Judgment and order appealed from are affirmed.

Barnard, P. J., and Jennings, J., concurred.